Mayor, &c., of Rahway v. Crowell.

THE MAYOR AND COMMON COUNCIL OF THE CITY OF RAHWAY v. CROWELL AND OTHERS.

1. When an official bond is given by an officer holding for a definite term, the obligation of such bond being, in general terms, conditioned for the good behavior of the officer, will not extend beyond such definite term.
2. Nor will the case be altered by the fact that such officer holds for a definite term, and until his successor shall be appointed, such latter term extending the obligation to a reasonable period only for the appointment of a successor.

In debt, on auditor and treasurer's bond. The declaration averred that C. entered upon the duties of his office on the 18th day of May, 1869, and continued to discharge them until the

June 4th, 1872, when he surrendered said office. The breach was that, during said time, he embezzled the public moneys, &c.

The last of the pleas put in alleged as follows: *Actio non*—because he says that, by virtue of the charter of the said plaintiffs, the said office of the said auditor and treasurer, at the time of the execution of the said supposed writing obligatory, was and ever since has been one, the official term of which begins on the second Monday in May in each year, and continues for one year from the commencement of said term, and until the successor of said auditor and treasurer may be appointed and qualified, the appointment of such officer being by the nomination of said mayor and the confirmation by said common council; and the defendant alleges that, during the official term of said auditor and treasurer succeeding the signing of said writing obligatory, to wit, at all times from the date of the signing thereof up to and including the said second Monday in May next succeeding the commencement of said official term, and up to and including a reasonable time thereafter for the appointment of the successor of said auditor and treasurer, he, the said auditor and treasurer, did faithfully his said duties, &c.

There was a demurrer to this plea.

Argued at February Term, 1878, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the plaintiffs, *Leslie Lupton* and *Thomas N. McCarter*.

For the defendants, *John P. Jackson*.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The question that was argued before this court in this case was, whether the sureties on the bond of the treasurer of Rahway, given in pursuance of the charter of that city, are liable for embezzlements committed by such officer after the expiration of the current year during which the bond was executed. The pleadings do not show

how the fact is, but it was assumed, in the discussion of counsel, that the treasurer was not re appointed after the close of the first year of the period during which he officiated, and in this light it will be regarded by me for the purposes of the present inquiry.

The general doctrine of the law touching the extent of the obligation of the sureties on an official bond, where the term of the office is definite and the obligatory words standing by themselves would extend their force over a wider period of time, has been elucidated by a series of adjudications, and may now be considered as entirely settled. The rule clearly is, that, in such cases, the obligation by intendment will be confined to the official term about to commence, or current at the time such bond comes into existence. The leading case in the line of authorities, and one which may be said to have expressed with directness, for the first time, the doctrine in question, is that of *Lord Arlington* v. *Merricke*, 3 *Saund.* 403. The aspect of that case was this: Lord Arlington, who was postmaster-general, had appointed a certain person to be " deputy postmaster of the stage of Oxon," &c., to execute the said office from, &c., *for the term of six months.* The condition of the bond was that if the said deputy should, " for and during all the time " that he should continue deputy postmaster, then, &c., the obligation should be void. The case, therefore, presented the problem as to the legal effect of a bond made by an officer whose term of office was definite, having a condition that, in terms, stipulated for his good behavior generally while continuing in the same office. The attempt in the reported case was to hold the sureties responsible for misfeasance by the deputy postmaster, committed after the expiration of his six months' term of office, he having been continued in his position beyond that period. But Lord Hale would not agree to this contention, adopting the view expressed by Saunders in his argument to the effect that it was the fair understanding, from the whole of the instrument, that the surety intended to be bound for the due execution of the said office " only for six months," and that

if the argument for the plaintiff prevailed, he would be bound during the whole life of his principal, which was " unreasonable to suppose." The precise point here obviously decided was, that although the obligatory words in the condition of an official bond were so broad that, intrinsically considered, ·they covenanted for the good behavior of the principal obligor during the whole period of his remaining in the designated office, nevertheless their efficacy would be restricted to his current term, when such term was for a determinate period, the ground of judgment being the manifest intent to that purpose of the contracting parties.

This decision appears never to have been questioned; eminent judges have cited it with approbation, and the principle on which it rests has been applied, under varied conditions, in a large number of subsequent cases, many of which will be found by reference to Mr. De Colyar's work on the law of Guaranties, page 255.

Within the limits thus defined, the law does not appear to be open to dispute; but the case now before the court is possessed of a peculiarity which sets it somewhat apart, and removes it from absolute subjection to established rules. The characteristic here indicated is, that it is not entirely clear that the term of office of the treasurer of the city of Rahway is for a definite period. If this be so, of course the reason that has led to the cutting down the generality of the obligatory words in the conditions of bonds of this kind, would altogether be wanting.

The plea that has been demurred to correctly states the tenure of this office; it alleges that the official term begins on " the second Monday in May in each year, and continues for one year from the commencement of said term, and *until the successor*" of *such treasurer shall have been appointed and qualified.* Founding himself on this definition of the official tenure, the counsel of the plaintiffs, in the forcible argument which he addressed to the court, insisted that the term of this office was not for a determinate period, but was for a year, and, in addition, for an indefinite time, depending on

circumstances.  The point is far from being free from uncertainty, and in its solution has been attended with so much difficulty that it has led to conflicting adjudications.  Certainly a plausible argument can be made on each side of the question; but, upon mature reflection, I have inclined to the view that it is more in harmony with the general principle ruling this subject, and which has been already stated, to refuse to give to the stipulation in question the latitude requisite to support the action of the plaintiff.  As has been above shown, the case of Lord Arlington v. Merricke passed to judgment on the express ground that, from the facts involved, it must be presumed to have been the intention to become bound for the current term of office only, and it seems to me that, in such cases as that now under consideration, such presumption, though not an exact equivalent for the intendment arising from the facts in the reported case, must still be held to be so cogent as to lead to a similar result. This office of city treasurer was plainly meant to be an annual one.  This is apparent from several provisions in the charter of the city of Rahway, which it is unnecessary to cite, but which being of a public character, will, in this argument, be officially noticed by the court.  Beyond all question, it was incumbent on the mayor and common council to annually fill this office, so that the continuance of this treasurer in office for a period beyond the year for which he was regularly chosen, was the result of neglect and breach of public duty. The particular inquiry that, therefore, here arises is, whether it is rational to infer that when this bond was given on the one side, and was received by the other, it was understood that the possibility of such a breach of official duty on the part of the obligees, in failing to fill this office at the appointed time, was to enter into the contract and was to be provided for.  Can we presume that virtually the city officials said to those sureties, this treasurer is appointed for a year, and you became his surety for that year; it is our duty to appoint his successor at the end of this year, but if we fail to perform that duty, you thereby become his surety for all such time as we

shall persist in such neglect, even though it may cover the whole life of the incumbent? It seems to me that, in the language of the case cited from Saunders, this it is "unreasonable to suppose." As the rule is that the words in the conditions of these official bonds are to be taken and construed in view of their application to the official term of the principal obligor; and as the official term in the present case was, in the regular course of things, the period of a year, the general terms in the condition must be contracted so as to relate only to that space of time. The deduction seems a fair one that the sureties, in making this contract, assumed that the orderly course, with regard to appointing to this office would be taken, and consequently, when it is averred that it was the purpose to provide for the contingency of a continuance in office, caused by the culpable neglect of the municipal authorities, it is not too much to require that such purpose should be evidenced by a specific stipulation for that purpose. We see by this whole series of cases that this generality of obligation is common in this entire class of bonds, and it would be going a dangerous length to say that the presence of such words imports a far wider meaning than they commonly do when the tenure of office is such that the officer is to hold over until his successor is qualified. I think, by a fair construction, the present agreement must be held to be that the surety would be liable for the good conduct for the current official year, which would include a reasonable period after the natural year for his successor to become duly qualified.

There are authorities that oppose this view, but I think the large majority of cases are in favor of it. The case first decided, and which is the most prominent of those harmonizing with the conclusion above expressed, is that of the *Chelmsford Company* v. *Demarest*, reported in 7 *Gray* 1. The suit was on the bond of the treasurer of a manufacturing company, who, by the provision of a statute of the state, was to be " chosen annually," and to hold his office until another should have been chosen and qualified in his stead. His bond obligated his sureties for his good behavior during his continuance

in said office. The effort of the suit was to make the sureties responsible for defalcations which had occurred after the expiration of the year in which the bond was given. The opinion in this case was carefully prepared by Chief Justice Shaw, and the judgment is justified for the reason that the office was an annual one, and that the statutory provision that the officers "shall hold their offices until others are chosen and qualified," did not substantially change the character of the office from an annual one to one for an indefinite time. He says: "But the authorities are uniform that, when the office is annual, the parties to the bond are presumed, by law, to bind themselves accordingly, if there are no words in the bond clearly extending it to a future election." In further considering the effect of the clause "until others are chosen and qualified," and after adverting to the fact that the construction contended for by the plaintiff would annul the previous clause making the office annual, he further says: "The law having directed that such officer shall be chosen annually, or at the annual meeting, it assumes and presupposes that such direction will be complied with, and then the words in question must be construed to mean, till the next annual meeting, or meeting at which such annual election is to be made, and such reasonable time afterwards as shall be sufficient to enable the officer-elect to procure and deliver his bond, and do whatever else is required to complete his qualification; or if he fails thus to qualify, until the corporation can elect another and cause him to be qualified. But if the corporation fail to comply with their legal duty of electing a treasurer annually, or if they fail to comply with a provision of law made for their benefit, and do not require him to give bond within a reasonable time after he has signified his acceptance of the election, and especially if they permit him to go on and act in the office during the whole of the year and for succeeding years, without giving bond, whatever other effect such a course may have on the rights and liabilities of the corporation, it cannot enlarge or vary the obligations of those who have become re-

sponsible for the conduct of such officer in performing the duties of an annual office."

These considerations are obviously of great weight, and were so received by the court in the case of *Dover* v. *Twombly*, 42 *N. Hamp.* 59, which was similar in all respects in point of fact with the one now under examination. A public statute made provision for the tenure of the office, and enacted that the "agent so appointed shall hold his office for one year, or until another is appointed, unless sooner removed." The result was, that the doctrine of the Massachusetts case was adopted, it being decided that the surety was not liable except for the first official year, and for a reasonable super-added period, in which to enable the successor to be qualified. *Welch* v. *Seymour*, 28 *Conn.* 387, is also an authority equally in point; the constitution of the corporation declaring that the officers were to be appointed annually, and were "to continue in office until the next annual meeting, and until others should be elected in their stead;" the court holding that the office being an annual one, the obligation of the bond, though couched in general terms, did not extend beyond the year for which the officer was first appointed, and remarking that "a provision for an extension of an official term until a successor is appointed, is well understood, and intended to be a precaution against a vacancy or lapse in the office, not to create an unlimited tenure." The case of *Mayor of Wilmington* v. *Horn*, 2 *Harr.* (*Del.*) 190, stands upon the same ground.

The cases in which an opposite view to that above expressed has been taken, have been examined by me, and I do not find in any of them that this question has received much attention, for it is certainly not discussed either upon general principles, nor with respect to antecedent authorities, for these are not even referred to, so that the point in controversy is assumed rather than considered.

The question whether an officer remains legally in office, who holds over beyond the definite period for which he was appointed, when his tenure of office is for such definite period, and until his successor shall have been appointed, is an im-

portant one, affecting, as it does, as well appointments under the constitution as under statutes; and as such question has not, on this occasion, been considered, none of the expressions used in the foregoing remarks are to be taken as allusive to it.